UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLOVIS LLOYD JOHNSON,<br>    Petitioner | : CIVIL NO. 3:01CV589(JCH)(HBF) |
| v. | : |
| LESLIE BROOKS AND<br>RICHARD BLUMENTHAL,<br>    Respondent | : OCTOBER 24, 2003 |

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION
## FOR A WRIT OF HABEAS CORPUS

**I.    PROCEDURAL HISTORY.**

In 1992, in the Connecticut superior court for the judicial district of New Haven, the petitioner entered a plea of guilty to first degree manslaughter, carrying a pistol without a permit and altering the identification number on a pistol.  He received a total effective sentence of 27 years incarceration.

Shortly thereafter, the petitioner filed his first state petition for a writ of habeas corpus in the Connecticut superior court for the judicial district of Tolland, alleging that he did not understand the plea process due to language problems.  Specifically, the petitioner alleged that "he believed the plea agreement called for a recommended sentence of twenty-seven months instead of twenty-seven years." Appendix A.[1]  That petition was

---

[1]The following documents are attached to this memorandum of law as appendices:

Appendix A - First state habeas court's memorandum of decision.
Appendix B - Postjudgment pleading and rulings in petitioner's first state habeas action
Appendix C - Second state habeas court's memorandum of decision
Appendix D - Petitioner's brief on appeal in second state habeas action
Appendix E - Appellate Court's decision in second state habeas action
Appendix F - Connecticut Supreme Court's denial of certification in second
             state habeas action

(continued...)

eventually heard and denied by the Tolland superior court on January 27, 1995. Id.

Pursuant to state court procedure, the petitioner, who was assisted by counsel in his state habeas proceeding, would have had to file a petition for certification to appeal the state habeas court's judgment within ten days, or by February 6, 1995. Connecticut General Statutes § 52-470(b). However, the petitioner did not file one until March 5, 1995 and it was denied as untimely by the first state habeas court on March 6, 1995. Appendix B. It was not until over fourteen months later, on May 14, 1996, that the petitioner then sought to file an appeal from the first state habeas court's judgment, which was denied by the Connecticut Appellate Court (hereinafter, "Appellate Court") on July 17, 1996. Id. Although it is unclear exactly how long the petitioner waited before subsequently petitioning the Connecticut Supreme Court to appeal the Appellate Court's judgment in the first state habeas action, the Connecticut Supreme Court's order denying certification is dated April 14, 1999. Id.

The petitioner later returned to state court with his second state habeas petition, filed in the Connecticut superior court for the judicial district of Hartford. In that petition, the petitioner claimed

> in the first count that his criminal trial attorney, Jerome Rosenblum and Beth Merkin, were ineffective in that they coerced him to terminate his jury trial in that his eyewitness, Glen Jackson who gave an affidavit that the petitioner who struggled for the gun with which the victim was trying to shoot the petitioner when it accidently went off, would not be believed. In the second count he allege[d] that the judge who took his plea promised as a part of the plea agreement that he would be credited with all his jail credit from the time that he was incarcerated as a result of this arrest amounting to 1 year and 7 months credit even though he was already a sentenced prisoner, and that

---

[1](...continued)
Appendix G - Federal District Court's Ruling in Docket 589

he has not been given that credit. In the third count he allege[d] that his habeas counsel, John R. Williams assisted by his associate, Attorney Norman Pattis, was ineffective in that he only alleged one claim, that is, that he was not fluent in the English language when he was canvassed, resulting in the failure to know that he was pleading to the offenses for a bargained sentence of twenty-seven (27) years.

Appendix C. The first and third counts of the second state habeas petition were denied after an evidentiary hearing, but the petitioner's case was remanded by the habeas court to the trial court for resentencing after the parties agreed that the petitioner should be given the sentence credit alleged in the second count. Id.

Although the petitioner's petition for certification to appeal the second state habeas court's judgment pursuant to Conn. Gen. Stat. § 52-470(b) was denied[2], an appeal nonetheless followed pursuant to Simms v. Warden, 230 Conn. 608, 646 126 A.2d (1994), which holds that a habeas petitioner can obtain appellate review of claims, notwithstanding the habeas court's denial of certification to appeal, if he can demonstrate that the habeas court abused its discretion in denying certification to appeal. In that appeal, the petitioner claimed: (1) that the second habeas court abused its discretion in denying certification to appeal; (2) that the petitioner was denied the effective assistance of trial counsel, specifically with respect to his alleged failure to investigate potential witnesses; and (3) that the petitioner was denied the effective assistance of habeas counsel due to first habeas counsel's failure to investigate and pursue the claim of ineffective assistance of trial counsel. This appeal was dismissed by the Appellate Court in an opinion dated July 11, 2000. Johnson v. Commissioner of Correction, 58 Conn. App. 729 (2000)(Appendix E).

---

[2]Unlike the petitioner's first state habeas appeal, the petition for certification to appeal the second state habeas court's judgment under Conn. Gen. Stat. § 52-470(b) appears to have been timely-filed.

3

The petitioner's petition for certification to appeal to the Connecticut Supreme Court was denied on October 12, 2000. Johnson v. Commissioner of Correction, 254 Conn. 928 (2000)(Appendix F).

Meanwhile, on or about May 24, 1999, the petitioner had filed his first federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Johnson v. Warden, State Prison, 3:99CV975(AWT)(DFM). The first federal petition was dismissed on October 25, 1999 because the petitioner had not exhausted his state court remedies with respect to all of his claims.

On April 11, 2001, the petitioner commenced this second federal habeas action, Docket No. 3:01CV589(JCH)(HBF)(hereinafter, "Docket 589"). The initial petition filed in this second action raised nine claims.[3] After the respondents moved to dismiss on the ground that the petition included several unexhausted claims, this court ruled that the first, third and seventh claims were properly exhausted and the remaining claims were not. See footnote 2, *supra*. In accordance with Zarvela v. Artuz, 254 F. 3d 274 (2d Cir. 2001), the

---

[3]The initial petition appeared to raise the following claims: (1) that the petitioner was not proficient in English and, therefore, did not understand that he was pleading to a sentence of twenty-seven years rather than twenty-seven months; (2) that the sentence imposed by the trial court was not in accord with the plea agreement*; (3) that the petitioner's trial counsel failed to conduct an adequate investigation prior to the plea; (4) that the petitioner's trial counsel was ineffective because he failed to bring to the trial court's attention a discrepancy between the plea agreement and the sentence imposed; (5) that the habeas court "abused its discretion" in its ruling regarding the sentence discrepancy*; (6) that the habeas court erred in denying his habeas corpus petition and his petition for certification to appeal*; (7) that the petitioner's first habeas counsel failed to conduct an adequate investigation, which, if pursued, would have led first habeas counsel to raise in the first state habeas petition the claim that trial counsel's investigation prior to the plea was inadequate; (8) that the first state habeas court erred in denying the first petition because it found (in part) that the petitioner did not voice any objection or confusion over the plea canvass and sentence and the law does not require any such objection; and (9) that the petitioner's first habeas counsel failed to file a petition for certification to appeal.

4

court dismissed the unexhausted claims, stayed the proceedings as to the exhausted claims, and ordered the petitioner to file notice, by March 11, 2002, that he had commenced exhaustion in state court within thirty days of its order, or by March 1, 2002. This court specifically warned the petitioner that, although this second petition was timely, it

> [did] not toll the running of the one-year imitations period for filing a federal habeas petition. See Duncan v. Walker, 121 S. Ct. 2120, 2129 (2001). Thus, were this court to dismiss the petition in its entirety, Johnson would be time-barred from raising grounds one, three and seven in a federal habeas petition.

The petitioner failed to comply with this court's order and, on April 8, 2002, the court issued an order vacating the stay, dismissing the instant case in its entirety and denying a certificate of appealability.

On May 2, 2002, the petitioner commenced a third federal habeas corpus action, presenting the same three claims that were alleged previously as claims one, three and seven in Docket 589, i.e., the claims which this court had found had already been exhausted. This third federal action eventually was given Docket No. 3:02CV376(JCH)(hereinafter, "Docket 376").[4] The respondents moved to dismiss the third federal petition on the grounds that it was untimely under 28 U.S.C. § 2244(d). The court agreed that the third action appeared to be time-barred and ruled that the third action should be dismissed. Appendix G. However, the court also chose to construe the petition in the third action as an amended petition in the *second* habeas action and ordered that

---

[4] The third federal action originally had been assigned to Judge Chatigney, but was later transferred to Judge Hall, who had also ruled in the second federal habeas action.

the second action (i.e., the instant case) be reopened and the petition filed in Docket 376 be treated as an amended petition in the resurrected Docket 589.

This response addresses the claims raised in that "amended petition."

## II. ARGUMENT

### A. Federal Habeas Corpus Relief Is Not Warranted On The Petitioner's Claim That He Did Not Understand The Terms Of His Potential Sentence Upon His Guilty Plea Due To His Lack Of Proficiency In English.

The petitioner's first claim in this federal action is that his alleged inability to understand English resulted in his misperception that he was agreeing to a sentence of only twenty-seven months rather than twenty-seven years. This claim does not warrant federal habeas relief because: (1) the petitioner's failure to comply with the state's rules for the timely filing of a petition for certification to appeal, which failure was the basis for the refusal of the state appellate courts to consider his appeal from the first state habeas proceeding which raised this claim, constitutes an adequate and independent state law ground for denying federal relief; and (2) the state habeas court's factual findings, which are entitled to a presumption of correctness in this proceeding, are fatal to his claim that he, in fact, misunderstood the terms of his plea agreement.

#### 1. Facts pertaining to this claim.

The facts underlying the first claim were set forth by the first state habeas court in its memorandum of decision as follows:

> The petitioner claims his confinement is unlawful because he misunderstood the sentence to be recommended by the prosecutor in exchange for his agreement to change his pleas to guilty. Specifically, the petitioner avers that he believed the plea agreement called for a

6

recommended sentence of twenty-seven months instead of twenty-seven years.

The petitioner testified at the habeas hearing that he emigrated to the United States from his native Jamaica. In Jamaica he attended school through the third or fourth grade. He indicated that his primary language was a Jamaican patois and that he encounters difficulty communicating with and comprehending English speakers from the United States. He further remarked that his trial counsel, Attorneys Beth Merkin and Jerome Rosenblum, instructed him that he should ask no questions of the trial court during the judge's canvass of his guilty pleas, but he was respond to the judge's questions with answers supplied to him by counsel. He also stated that he first learned that the length of his sentence was twenty-seven years after he arrived at Somers prison.

Rosenblum also testified at the habeas hearing. He related that, although the petitioner's accent required Rosenblum to listen carefully when the petitioner spoke, he was able to communicate smoothly and effectively with the petitioner. Rosenblum stated that he was lead counsel and engaged in numerous conversations with the petitioner concerning his case. Rosenblum noted that the prosecution had made an offer to recommend twenty-five years to serve early on in the case, that Rosenblum conveyed this offer to the petitioner, and that the petitioner rejected the offer. After jury selection began, the petitioner decided to change his plea. At that point, the prosecution was willing to recommend a sentence of twenty years to serve on the manslaughter count, five years on the carrying without a permit, and two years on the altered identification number count, consecutive to each other, for a total, effective sentence of twenty-seven years incarceration. Rosenblum added that he explained this offer to the petitioner in detail and that, contrary to the petitioner's testimony, the petitioner correctly understood the terms of the offer.

He also related that he requested no interpreter because the petitioner did not need one. Rosenblum denied that, at the plea hearing, the petitioner merely regurgitated answers fed to him by Rosenblum or anyone else.

The court has reviewed the transcripts of the plea and sentencing hearings (Petitioner's Exhibits A and B). When the trial court inquired as to the petitioner's understanding of the proposed plea agreement, the court employed the words "year" or "years" seven times (Petitioner's Exhibit A, pp. 18 and 19). During the sentencing hearing, the prosecutor reiterated the specific terms of the recommended sentence and used the word "years" four times (Petitioner's Exhibit B, p. 2). In pronouncing the sentence, the court also spoke the word "years" four times (Petitioner's Exhibit B, pp. 4 and 5).

At no time during the canvass or sentencing proceeding did the petitioner object to, seek clarification of, or voice confusion over the stated agreement.

Credibility is for the trier-of-fact to determine. The court finds Rosenblum's version of events to be credible and accurate, and the court finds that the petitioner knew the plea agreement called for a total, effective sentence recommendation of twenty-seven years to serve. The petitioner conceded that, at the time he pleaded guilty, he understood the difference between the English words "year" and "month." Also at that time the petitioner was serving another prison sentence of eight years, suspended after four years for a narcotics conviction. It strains credibility to suggest that the petitioner believed he was to receive a lesser sentence for intentionally shooting and killing a person than for a narcotics violation. In short, based on all the evidence adduced, the court disbelieves the petitioner's claim that he misunderstood the plea agreement and recommended sentence.

The burden of proof in a habeas corpus case is on the petitioner to establish his claim of illegal confinement by a preponderance of the evidence, Paulsen v. Manson, 193 Conn. 333, 337, 476 A.2d 1057 (1984). The petitioner has failed to meet this burden. For the above reasons, the petition is dismissed.

Appendix C.

> **2. Because the petitioner's failure to comply with state procedural rules pertaining to the timely filing of a petition for certification and the timely filing of an appeal resulted in the highest state court's refusal to consider the first claim, it should not be considered by this court on federal habeas review.**

The Supreme Court has held that a federal district court should not address a federal claim by a state prisoner in a habeas corpus action if the state court has decided the issue on a state law ground that is independent of the federal question and adequate to support the judgment. Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000); Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-54 (1991). "This rule applies whether the state law ground is substantive or procedural." Id.

8

Thus, when a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, its ruling constitutes an "independent and adequate state ground" which bars federal habeas review unless the prisoner can demonstrate that "cause" exists to excuse the default and that sufficient "prejudice" would result from the denial of federal review. Coleman, 111 S.Ct. at 2564. See Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639 (1986); Engle v. Issac, 456 U.S. 107, 102 S.Ct. 1558 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); Roman v. Abrams, 822 F.2d 214, 222 (2d Cir. 1987); Stepney v. Lopes, 760 F.2d 40, 44 (2d Cir. 1985). Federal habeas review also may be extended, notwithstanding a petitioner's inability to show cause, in an "extraordinary case" where the failure to do so would result in a fundamental miscarriage of justice.[5] Coleman, 111 S.Ct. at 2564; Murray, 106 S.Ct. at 2650.

A petitioner's failure to comply with legitimate state court procedures regarding the timely assertion of a claim or pursuit of a claim is precisely the type of "adequate and independent" state law ground addressed by Coleman, which declared that, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as

---

[5]The "fundamental miscarriage of justice" exception applies to those cases where "a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986); Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 111 S.Ct. at 2565.

In the present case, the first state habeas court denied the petition for certification to appeal because it was untimely. Appendix B. It is also clear that the Appellate Court also refused to consider the petitioner's attempt to file a late appeal nonetheless because that, too, was not filed until over fourteen months after the Appellate Court's action. Id. Thus, although the Connecticut Supreme Court's decision denying certification in the petitioner's first state habeas action does not expressly state that it was doing so on the grounds of untimeliness; Appendix B; such an adequate and independent state law ground is implicit in its ruling in light of the decisions of the lower state courts regarding timeliness. See Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991) (federal court on habeas review looks through unreasoned state court decisions to the last reasoned decision to determine whether highest state court's ruling based upon state law grounds grounds).

The "amended petition" makes no claim of sufficient cause and prejudice to excuse this default. Moreover, although the defendant challenges his alleged understanding of the sentencing terms of his guilty plea, the petition does not even suggest any basis for rejecting the admission of guilt inherent in his guilty plea, thereby undermining any claim under the "miscarriage of justice" exception.[6] See Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995).

---

[6]Of course, the respondent does not concede that, had the petitioner challenged the reliability of the guilty plea itself, that such a claim alone would be sufficient to raise an issue under the extraordinary standard which must be met for the "miscarriage of justice" exception.

10

Because the petitioner failed to comply with the state's legitimate rules requiring both a timely petition for certification to appeal and a timely appeal from any ruling thereon, the state habeas court's judgment addressing the first claim, it should not be considered in this proceeding.

### 3. Alternatively, the presumptively-correct factual findings of the first state habeas court undermine the petitioner's claim.

Alternatively, the petitioner's first claim does not merit federal habeas relief. The question of whether the petitioner, in fact, understood the terms of the proposed sentence clearly presents a question of fact. The petitioner makes no claim that the first state habeas court's factual findings are "unreasonable" within the meaning of 28 U.S.C. § 2254(d)(2) and he presents no "clear and convincing evidence" which would undermine them. To the contrary, the first state habeas court's well-reasoned decision, which relied in large part upon its determination regarding the credibility of the witnesses, should be deferred to and fully supports its conclusion that the petitioner's claim is meritless.

Accordingly, federal habeas corpus relief must be denied on this claim as well.

### B. Federal Habeas Corpus Relief Is Not Warranted On The Petitioner's Claim That He Was Denied The Effective Assistance Of Counsel In Entering His Guilty Plea.

The petitioner's second claim in this federal action is that he was denied his federal constitutional right to the effective assistance of counsel in entering his guilty plea because trial counsel "failed to secure the testimony of `Glen Jackson' whose testimony might have established a self-defense case for him. . . ." This claim is without merit because the state

11

courts' resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 1.    Facts pertaining to this claim.

The second state habeas court made the following findings and legal conclusions with respect to this second claim:

> The petitioner brings this petition for a writ of habeas corpus alleging in the first count that his criminal trial attorney, Jerome Rosenblum and Beth Merkin, were ineffective in that they coerced him to terminate his jury trial in that his eyewitness, Glen Jackson who gave an affidavit that the petitioner who struggled for the gun with which the victim was trying to shoot the petitioner when it accidently went off, would not be believed. In the second count he alleges that the judge who took his plea promised as a part of the plea agreement that he would be credited with all his jail credit from the time that he was incarcerated as a result of this arrest amounting to 1 year and 7 months credit even though he was already a sentenced prisoner, and that he has not been given that credit. In the third count he alleges that his habeas counsel, John R. Williams assisted by his associate, Attorney Norman Pattis, was ineffective in that he only alleged one claim, that is, that he was not fluent in the English language when he was canvassed, resulting in the failure to know that he was pleading to the offenses for a bargained sentence of twenty-seven (27) years.
>
> The petitioner produced the testimony of Attorney Williams and Attorney Merkin. Williams testified that he did not raise as an issue in the petition for a writ of habeas corpus for the petitioner brought earlier, the alleged eye-witness, Glen Jackson's account of the incident, Petitioner's Exhibit 5, because it was not consistent with the police evidence and the other eyewitnesses at the scene. He further testified that Jackson was known to him from previous contact and was not a credible person and was lying about the event. Ms. Merkin testified that the petitioner had produced that Glen Jackson was an eyewitness who would corroborate the petitioner's account of the shooting of Sharon Little who was shot in the apartment behind a closed apartment door when she drew the gun from her bra and in the struggle with the petitioner for the gun was shot. She found not only was Jackson vague as to where he was during the incident, but both Jackson and her client gave an account different from the state's eye-witnesses to the event who she found credible but also other police evidence from the scene such as that the victim was not wearing a bra and the location of the shell casing at the scene. She conveyed her thoughts about Jackson to the petitioner by letter. Petitioner's Exhibit 6.

12

> Glen Jackson was called by the petitioner and claimed to have been called from his bed downstairs from the victim's apartment by the victim. Jackson testified that he was her "big brother" who helped pacify her relationship with the petitioner and was that night called to break up an argument between the petitioner and one Barbara James. When he did get upstairs and talked to the petitioner and Barbara to leave the apartment, the victim began trying to shoot the petitioner who was struggling for the gun which went off into the victim. He didn't wait around for the police because there was a warrant out for his arrest.
>
> The petitioner has introduced the transcript of the plea of the [*4] petitioner and the respondent has introduced the transcript of the sentencing of the petitioner.
>
> A successful petitioner must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v. Commissioner. 234 Conn. 139, 662 A.2d 718 (1995); Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357, 559 A.2d 206. As Judge O'Keefe in his sentencing remarks stated "He made a wise choice. He would have gotten more time than twenty-seven years if he was convicted of murder--a very strong likelihood of conviction." This court has to agree with that observation in viewing the evidence before it.

Appendix C. The Appellate Court affirmed the second state habeas court for essentially the same reasons. Appendix E.

### 2. This claim fails to meet the standard fo 28 U.S.C. § 2254(d) for federal habeas corpus relief.

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter, "AEDPA") became effective April 24, 1996. As part of this Act, 28 U.S.C. § 2254(d) was amended to read as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

13

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Pursuant to this provision, a writ of habeas corpus "may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).[7] The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the High Court's "decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412, 120 S.Ct. at 1523.

A state court decision is "contrary to" clearly established Federal law if it falls within one of two scenarios. Under the first scenario, a state-court decision will be contrary to "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." Williams, 529 U.S. at 405, 120 S.Ct. at 1519. As for the second scenario, the Court explained that a "state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are

---

[7] Justice O'Connor delivered the opinion of the Court with respect to Part II in which it determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role played by federal habeas courts in reviewing petitions filed by state prisoners and interpreted § 2254(d)(1). Justice Stevens delivered the opinion of the Court with respect to Parts I, III, and IV.

14

materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 406, 1519-20.

In the present case, it cannot be said that the second state habeas court's decision rejecting the petitioner's claim of ineffective assistance of trial counsel was "contrary to" federal law. The High Court has declared that, in order to satisfy that provision,

> the state court's decision must be *substantially different* from the relevant precedent of [the Supreme Court]... A state-court decision will certainly be contrary to [the Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases... A state-court decision will also be contrary to [the Supreme Court's] clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams, 120 S.Ct. at 1519-20 (emphasis added). The Court then distinguished that situation from the

> run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court cases] to the facts of a prisoner's case [which] would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume for example, that a state court decision on a prisoner's ineffective-assistance claim correctly identifies Strickland[ v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with [the Court's] decision in Strickland as to the legal prerequisites for establishing an ineffective-assistance claim, *even assuming the federal court considering the prisoner's habeas application might reach a different result applying the Strickland framework itself.*

Williams, 120 S.Ct. at 1520 (emphasis added). To emphasize the deference owed state court decisions, the Court reiterated that "[a]lthough the state-court decision may be contrary to the federal court's conception of how Strickland ought to be applied in that particular case, the decision is not 'mutually opposed' to Strickland itself" and, therefore, not subject to reversal in federal habeas corpus. Id. See Gilchrist v. O'Keefe, 260 F.3d

15

87, 97 (2d Cir. 2001)(state court decision that petitioner "forfeited" his right to counsel through misconduct was not "contrary to" clearly established Supreme Court precedent because no Supreme Court case had held that a defendant may not forfeit (as opposed to waive) his right to counsel absent certain procedural safeguards).

In the present case, the state court decision correctly identifies <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984) as the controlling legal authority. The second state habeas court also cites to <u>Copas v. Commissioner</u>, 234 Conn. 139, 151, 662 A.2d 718 (1995), which itself references <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366 (1985) as the appropriate standard for refining the <u>Strickland</u> standard in the context of a guilty plea. Thus, irrespective of whether the district court or this court might have reached a different result applying the <u>Strickland/Hill</u> framework itself, it cannot be said that the state court's decision meets the "contrary to" provision of § 2254(d)(1). <u>Williams</u>, 120 S.Ct. at 1520. See <u>Francis S. v. Stone</u>, 221 F.3d 100, 112 (2d Cir. 2000)(state court's use of correct legal standard "eliminates any concern that its decision is `contrary to' established federal law. . . .")

If a state-court decision is not "contrary to" U.S. Supreme Court precedent, the federal habeas court must determine whether the state court's decision involved an "unreasonable application" of clearly established Federal law. In so doing, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Thus, courts must apply an objective standard. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Id</u>. at 410, 1522. See also <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1174-75, 155 L.Ed.2d 144 (2003) (A state court's

16

application must be "objectively unreasonable," and "objectively unreasonable" requires something more than "clear error.") "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411, 120 S.Ct. at 1522.

Once again emphasizing the difference between an "unreasonable" state court decision and one with which a federal court merely disagrees, the Court also stated that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 120 S.Ct. at 1522 (emphasis in original). Thus, under this provision, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.; see Sellan v. Kuhlman, 261 F.3d 303, 310 (2d Cir. 2001); see also Jones v. Stinson, 229 F.3d 112, 121 (2d Cir. 2000)("On direct review, we might have concluded that [the excluded evidence] created reasonable doubt that did not otherwise exist. As a habeas court, however, our review is limited to whether the [state court]'s ruling was objectively reasonable, not whether it was correct."); Francis S., 221 F.3d at 113 ("As an initial question of federal constitutional law, unconstrained by section 2254(d)(1), we might well rule that [a constitutional] violation has been shown. Applying the standard of `objective unreasonableness' required by section 2254(d)(1), however, we cannot say this it was objectively unreasonable" for the state courts to reject the petitioner's claim). Indeed, as the High Court declared in Lockyer, even a federal habeas court's belief

17

that there was "clear error" in the state court's reasoning is not dispositive of the question of whether the state court's decision was *unreasonable*. Lockyer, 123 S.Ct. at 1174-75.

Here, the petitioner is hard-pressed to meet that difficult standard. The second state habeas court reasonably considered the evidence in light of the second prong of the Strickland/Hill standard ("the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") and concluded that the petitioner had not met his burden of demonstrating that he would have rejected his favorable plea offer considering all of the circumstances. Appendix C. Irrespective of whether this court agrees with this evaluation, it cannot be said that such a conclusion was an "unreasonable application of" Supreme Court precedent in this respect.

Accordingly, federal habeas relief is not warranted on the petitioner's second claim.

### C. Federal Habeas Corpus Relief Cannot Lie On The Basis Of The Alleged Ineffective Assistance Of State Habeas Counsel Asserted As Claim Three In The Instant Petition.

As his final claim, the petitioner claims that he was denied the effective assistance of counsel in his first state habeas proceeding because that attorney "failed to investigate and secure the testimony of Glen Jackson." However, the petitioner had no *federal* constitutional right the counsel in a state habeas proceeding. Coleman, 111 S.Ct. at 2566; Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990 (1987). Consequently, this final count fails to state a claim upon which federal habeas corpus relief from a state court judgment of conviction may be granted under pursuant to 28 U.S.C. § 2254(a).

28 U.S.C. § 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Federal habeas corpus relief does not extend to perceived errors of state law only. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 480 (1991); Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 875 (1984); Lockett v. Montemango, 784 F.2d 78, 81 n.7 (2d Cir.), cert. denied, 479 U.S. 832 (1986). Because the Supreme Court has made clear that there is no federal constitutional right to the effective assistance of counsel in a collateral proceeding, federal habeas relief cannot lie on the basis of the petitioner's third claim here.

Finally, even if considered, it cannot be said that the second state habeas court's ruling on this issue, affirmed by the Appellate Court, was contrary to, or an unreasonable application of, clearly established federal law. As the state court correctly reasoned, the conclusion that *trial* counsel was not constitutionally ineffective for failing to pursue Glen Jackson as a witness rather than advise the petitioner to accept the favorable guilty plea renders moot any claim that state habeas counsel was similarly ineffective for failing to pursue that same theory in the first state habeas proceeding. Appendix C.

## IV.   CONCLUSION.

For the foregoing reasons, the petition for a writ of habeas corpus should be denied.

Respectfully submitted,
RESPONDENT

By: _____
JAMES A. KILLEN
Senior Assistant State's Attorney
Appellate Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT   06067
Tel. 860-258-5807
Fax. 860-258-5828
Federal Bar No. ct 02058

## **CERTIFICATION**

I hereby certify that a copy of this document was mailed to Clovis Lloyd Johnson, Pro Se, Inmate #189784, Osborn Correctional Institution, 100 Bilton Road, P.O. Box 100, Somers, CT 06071 on October 24, 2003.

_____
JAMES A. KILLEN
Senior Assistant State's Attorney